UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION

A BOHEME DESIGN, L.L.C.                                    PLAINTIFF

VS.                          CIVIL ACTION NO. 3:25-CV-416-TSL-RPM

BRUCE KELLY PROPERTIES
LIMITED LIABILITY COMPANY
AND CHARLES BRUCE KELLY                                   DEFENDANTS

MEMORANDUM OPINION AND ORDER

This cause is before the court the motion of defendants
Bruce Kelly Properties Limited Liability Company and Charles
Bruce Kelly[1] to dismiss under Rule 12(b)(6) of the Federal Rules
of Civil Procedure.  Plaintiff A Boheme Design, L.L.C. (Boheme)
has responded in opposition to the motion.  The court, having
considered the parties' memoranda of authorities, concludes that
the motion should be granted in part and denied in part, as set
forth herein.

**I.    The Complaint**

According to the allegations of the complaint, plaintiff
Boheme is a full-service architecture, interior architecture and

---

[1]    Defendant Bruce Kelly Properties, L.L.C., is solely owned
by defendant Charles Bruce Kelly.  As explained by defendants,
the L.L.C. is not a business entity but simply a vehicle Mr.
Kelly established to hold the real property containing his home
that is the subject of this action.  For purposes of this
motion, "defendant" will refer collectively to defendant Charles
Bruce Kelly and Bruce Kelly Properties, L.L.C.

interior design firm located in Inlet Beach, Florida.  The company creates original architectural works and provides design services for its clients, specializing in luxury residential and commercial architecture along the coast of the Florida Panhandle.

In 2013, plaintiff was hired by Jean and Dan Basse to design a home that was to be constructed on a beach front lot in Inlet Beach.  The design, which plaintiff titled the "Basse Residence," was completed in 2014.  The home was then constructed in accordance with Boheme's design.

In November 2024, Jean Basse notified Boheme that she had seen a house being constructed on Highway 30A in Inlet Beach that was a copy of her home.  The home, on a lot owned by defendant, was approximately a mile from the Basse home.

Plaintiff alleges that defendant selected an architect, Stackable + Mracek Design Group (Stackable), and asked Stackable to design a house to be built on his lot so that the exterior elevation on the street side would be a copy of the same elevation of the Basse home.  According to the complaint, "on information and belief, Defendant[] and/or Stackable obtained a copy of the BOHEME plans for the Basse Residence from a contractor who had originally bid, but was not awarded, the contract to construct the Basse home [the "Contractor"] and copied the streetside elevation for the house to be built on

2

[defendant's] lot."  Defendant then hired the Contractor to build a house on his lot "including a copy of the street-side elevation of the Basse Residence by construction the house on [defendant's] lot based on the Stackable plans."

Plaintiff obtained a copyright registration for its "architectural work" on May 2, 2025, and then brought this action against defendant under the Copyright Act and the Architectural Works Copyright Protection Act, 17 U.S.C. § 101, *et seq.*, asserting causes of action against defendant for direct, contributory and vicarious copyright infringement. Defendant has moved to dismiss each of these claims.[2]

## II.  Motion to Dismiss Standard

To survive a Rule 12(b)(6) motion to dismiss for failure to state a claim upon which relief can be granted, "a complaint 'does not need detailed factual allegations,' but must provide the plaintiff's grounds for entitlement to relief—including factual allegations that when assumed to be true 'raise a right to relief above the speculative level.'"  Cuvillier v. Taylor, 503 F.3d 397, 401 (5th Cir. 2007) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555, 127 S. Ct. 1955, 167 L. Ed. 2d 929

---

[2]     Section 411 of the Copyright Act imposes a requirement of copyright registration as a precondition to filing a copyright infringement claim.  See 17 U.S.C. § 411(a); see also Reed Elsevier v. Muchnick, 559 U.S. 154, 167, 130 S. Ct. 1237, 176 L. Ed. 2d 17 (2010) (finding § 411's registration requirement is a precondition to filing suit for infringement).

(2007)).  In other words, the complaint "must contain sufficient factual matter, accepted as true, to state a claim for relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009) (citation modified).  "[C]onclusory allegations or legal conclusions masquerading as factual conclusions will not suffice[;] the court must strip and disregard them from the pleading, even if consistent with liability." United States v. Encompass Health Rehab. Hosp. of Pearland, L.L.C., No. 25-20093, 2025 WL 3063921, at *2 (5th Cir. Nov. 3, 2025) (citation modified).

In determining whether a plaintiff's claims survive a Rule 12(b)(6) motion to dismiss, the "court's review is limited to the complaint, any documents attached to the complaint, and any documents attached to the motion to dismiss that are central to the claim and referenced by the complaint." The Lone Star Fund V (U.S.), L.P. v. Barclays Bank PLC, 594 F.3d 383, 387 (5th Cir. 2010).

### III. Copyright Infringement: Architectural Works

Under the Copyright Act, "[c]opyright protection subsists ... in original works of authorship fixed in any tangible medium of expression...." 17 U.S.C. § 102(a).  Architectural works are protected by copyright law under two separate provisions of the Copyright Act.  Interplan Architects, Inc. v. C.L. Thomas, Inc., Civ. Action No. 4:08-cv-03181, 2010 WL 4366990, at *5 (S.D. Tex.

4

Oct. 27, 2010).  First, § 102(a)(5) protects "pictorial, graphic, and sculptural works," which are defined to include "technical drawings, including architectural plans."  Id. (quoting § 102(a)(5)).  Second, the Architectural Works Copyright Protection Act (AWCPA), added in 1990, extended copyright protection to "architectural works" as a distinct new category of authorship.  Id. (citing § 102(a)(8)). Architectural works are defined in section 101 as the

> design of a building as embodied in any tangible
> medium of expression, including a building,
> architectural plans, or drawings.  The work includes
> the overall form as well as the arrangement and
> composition of spaces and elements in the design but
> does not include individual standard features.

17 U.S.C. § 101.  See Javelin Inv., LLC v. McGinnis, Civ. Action No. H-05-3379, 2007 WL 781190, at *3–4 (S.D. Tex. Jan. 23, 2007) (explaining that "copyright protection for an architectural work may encompass both architectural plans and constructed buildings").

A copyright holder has certain exclusive rights to the work, including the right to reproduce all or any part of the copyrighted work, to prepare derivative works based upon the copyrighted work,[3] and to distribute copies of the copyrighted work to the public "by sale or other transfer of ownership, or

---

[3]    A derivative work is a work based on or derived from one or more already existing works.  17 U.S.C. § 101.

5

by rental, lease, or lending." 17 U.S.C. § 106(1),(2)&(3).

Infringement occurs when someone violates one of the copyright

owner's exclusive rights to a work, id. § 501(a), in which case

the owner has the right to sue for infringement, id. § 501(b).

To establish copyright infringement, a plaintiff must prove

(1) ownership of a valid copyright, and (2) copying of the

constituent elements of the work that are original. Javelin,

2007 WL 781190, at *4 (citing Feist Publ'ns, Inc. v. Rural Tel.

Serv. Co., 499 U.S. 340, 361, 111 S. Ct. 1282, 113 L. Ed. 2d 358

(1991), Positive Black Talk Inc. v. Cash Money Records Inc., 394

F.3d 357, 367-68 (5th Cir. 2004), and Engineering Dynamics, Inc.

v. Structural Software, Inc., 26 F.3d 1335, 1340 (5th Cir.

1994)).

> To establish actionable copying ... a plaintiff must
> prove: (1) factual copying and (2) substantial
> similarity. Bridgmon v. Array Sys. Corp., 325 F.3d
> 572, 576 (5th Cir. 2003). Factual copying "can be
> proven by direct or circumstantial evidence." Id.
> "As direct evidence of copying is rarely available,
> factual copying may be inferred from (1) proof that
> the defendant had access to the copyrighted work prior
> to creation of the infringing work and (2) probative
> similarity." Peel & Co. v. Rug Market, 238 F.3d 391,
> 394 (5th Cir. 2001).

Positive Black Talk, 394 F.3d at 367-68. Probative similarity

exists when two works, "when compared as a whole, are adequately

similar to establish appropriation." Id. at 369 (quoting Peel &

Co., Inc. v. The Rug Market, 238 F.3d 391, 397 (5th Cir. 2001).

"[P]robative similarity requires only that certain parts of the

6

two works are similar, such that the jury may infer factual copying in light of the defendant's access to the plaintiff's work." Id.

If a plaintiff establishes an inference of factual copying, the defendant can rebut that inference, and thus escape liability for infringement, if he can prove that he independently created the work. Id. at 368. If a plaintiff has established factual copying and the defendant does not establish independent creation, then to establish his claim of infringement, he must prove that the "factual copying is legally actionable" by showing that the copyrighted work and the allegedly infringing work are substantially similar." Javelin, 2007 WL 781190, at *4 (citing Eng'g Dynamics, 26 F.3d at 1341).

The law recognizes two types of copyright infringement, direct and secondary. Stross v. Realty Austin, LLC, Case No. 1:20-cv-01071-RP, 2021 WL 2942399, at *2 (W.D. Tex. July 13, 2021)(citing BWP Media USA, Inc. v. T & S Software Assocs., Inc., 852 F.3d 436, 439 (5th Cir. 2017)).

> Direct copyright infringement occurs when a party
> engages in infringing conduct. See Sony Corp. of Am.
> v. Universal City Studios, Inc., 464 U.S. 417, 433
> (1984) (stating that anyone who violates exclusive
> rights of a copyright owner is an infringer).
> Secondary liability is a means of holding parties
> responsible for infringement by others even if they
> have not engaged in the infringing activity. Id. at
> 435. Secondary infringement occurs when one
> intentionally induces or encourages infringing acts by
> others or profits from such acts while declining to

7

> exercise a right to stop or limit them. <u>Metro-
> Goldwyn-Mayer Studios Inc. v. Grokster, Ltd.</u>, 545 U.S.
> 913, 930 (2005).  A plaintiff is entitled to plead
> alternative claims for direct and contributory
> copyright infringement against a single defendant even
> if the theories are inconsistent or based on
> inconsistent allegations of fact. <u>Oppenheimer v.
> Deiss</u>, No. A-19-CV-423-LY, 2019 WL 6525188, at *3
> (W.D. Tex. Dec. 3, 2019) (citing FED. R. CIV. P.
> 8(d)(3)), <u>R. & R. adopted</u>, 2020 WL 10056214 (W.D. Tex.
> Jan. 15, 2020).

<u>Stross</u>, 2021 WL 2942399, at *2.  Plaintiff herein has alleged

claims of both direct and secondary infringement.

### IV.   <u>Arguments for Dismissal</u>

#### A. Direct Infringement

Defendant seeks dismissal of plaintiff's direct

infringement claim for one or more of several reasons, addressed

below.

##### 1. <u>Infringement of the Work "as a Whole"</u>

First, defendant contends that as a matter of law, a "front

elevation" by itself is not an "architectural work" under 17

U.S.C. § 101; and, since plaintiff has not alleged that the

Kelly Residence *as a whole* is substantially similar to the Basse

Residence *as a whole*, then plaintiff has no viable claim for

infringement.  As the court understands the argument, defendant

reasons that because an "architectural work" is defined to

"include[] the overall form" of a building, it follows that the

front elevation of a building "is not protectible, by itself, as

an 'architectural work.'"  Thus, since plaintiff has not alleged
that defendant copied the Basse Residence *as a whole* but has
instead alleged only that he copied a portion of the design of
the residence, namely, the street-facing elevation, then
plaintiff's claim fails as a matter of law.  Defendant's
argument is not well taken.

Plaintiff's copyright in the Basse Residence as an
architectural work does, by definition, include the home's
"overall form."  That is, its copyright protection encompasses
the entire design.  But its copyright can be infringed by
copying any protectable part of the design, including, in the
court's opinion, only the exterior, or one elevation of the
exterior.  In Bonner v. Dawson, No. 5:02CV00065, 2003 U.S. Dist.
LEXIS 19069 (W.D. Va. Oct. 14, 2003), for example, the defendant
was found liable for infringement for copying only the front
elevation of a commercial building.  Id. at *17 (holding that "a
claim for copyright infringement of architectural design may lie
on the basis of infringing interior floor plans, exterior
structure, or both.").  See also Richmond Homes Mgmt., Inc. v.
Raintree, Inc., 862 F. Supp. 1517, 1527 (W.D. Va. 1994), aff'd
in part and rev'd in part on other grounds, 66 F.3d 316 (4th Cir.
1995) ("Infringement can be established on the basis of
infringing either the floor plans or the exterior, or both."),

Similarly, in Scholz v. Design, Inc. v. Crosby, No. C2-03-

498, 2005 WL 8163028, at *5 (S.D. Ohio Feb. 28, 2005), where only the front and side exterior of a home was allegedly infringed upon, the court acknowledged but rejected the defendant's argument, which echoes the argument of defendant herein, that "the real issue before the Court is 'whether the entire home taken as a whole could be considered substantially similar to the Sagamore Hill home....'" Id. at *5, n.5.  The court disagreed, stating, "To allow a builder to copy the exterior of a copyrighted home design would be similar to allowing an author to copy a chapter out of a copyrighted book. The Court is not persuaded by defendant's argument." Id.[4]

In Axelrod & Cherveny, Architects, P.C. v. T. & S. Builders Inc., 943 F. Supp. 2d 357, 362 (E.D.N.Y. 2013), the court adopted this position, noting that its underlying rationale, i.e., that "'[i]t is not necessary to prove that every element

---

[4]    Oddly, in a footnote in his memorandum brief, defendant purports to acknowledge that "[p]laintiff is generally correct that '[c]opyright infringement of an architectural work such as the Basse Residence can be established on the basis of infringing either the floor plan, the exterior, or both.'" (quoting the Complaint, para. 25).  He continues, however, stating that "Plaintiff omits the key detail that infringement can be established on the basis of the *overall* exterior," and observes that "Plaintiff has not alleged ... that the Kelly Residence infringes the overall exterior or floorplan of the Bass Residence architectural work."  Notably, Bonner and Scholz did not involve allegations of infringement of the "overall exterior," but rather one and two elevations, respectively. Defendant has offered no authority supporting the contention that infringement exists only if the entire exterior was copied.

of the [floor] plans or structure was copied; it is sufficient to show that a substantial part was copied,'" (quoting <u>Richmond Homes</u>, 862 F. Supp. at 1527), had been applied by the Second Circuit in other contexts, <u>id.</u> (citing <u>Nikanov v. Simon & Schuster, Inc.</u>, 246 F.2d 501, 504 (2d Cir. 1957)).  The court thus held that its "finding of a substantial similarity between the exterior designs [of the homes at issue] necessarily [led] to a conclusion that plaintiffs' copyrights were infringed." <u>Id.</u>  <u>See also</u> <u>John Wieland Homes and Neighborhoods, Inc. v. Poovey</u>, Civ. No. 3:03CV168–H2004 WL 2108675, at *6 (W.D.N.C. Aug. 2, 2004) ("In context of architectural plans, substantial similarity may be established on the basis of similarity between 'either the floor plans or the exterior, or both.'" (quoting <u>Richmond Homes</u>, 862 F. Supp. at 1527).[5]

### 2. **Substantial Similarity**

Defendant next maintains that there is no infringement in any event because the numerous differences between the front elevations of the Basse Residence and Kelly Residence exceed any alleged points of similarity in the protectable elements of the

---

[5]   The court acknowledges but rejects the statement by the court, in dicta, in <u>Zalewski v. T.P. Builders, Inc.</u>, 875 F. Supp. 2d 135, 153 (N.D.N.Y. 2012) – the lone case cited by defendant on this issue - that to establish a claim of copyright infringement of an architectural work, "it is insufficient to demonstrate that a single component of the design, such as an individual floor plan or elevation view, has been copied." <u>Id.</u> 153, n.22.

Basse Residence, as reflected in photographs of the two homes appearing in paragraph 19 of the complaint.

As one court has summarized,

> The substantial similarity distinction requires a comparison of the two works to determine whether a layman would view them as substantially similar. [Bridgmon v. Array Sys. Corp., 325 F.3d 572, 576 (5th Cir. 2003)](citing Creations Unlimited v. McCain, 112 F.3d 814, 816 (5th Cir. 1997)).  Furthermore, the substantial similarity determination requires comparison not only of the two works' individual elements in isolation, but also of their "overall look and feel."  Sturdza v. United Arab Emirates, 281 F.3d 1287, 1296 (D.C. Cir. 2002).  "[C]onsidering the works as a whole is particularly important because protectible expression may arise through the ways in which artists combine even unprotectible elements."  Id.  In Sturdza, the court breaks the substantial similarity inquiry into two steps, the first of which is to identify which aspects of the artist's work, if any, are protectable by copyright.  Sturdza, 281 F.3d at 1295.  The second is to determine whether the alleged infringer's work is substantially similar to these protected elements.  Id.

Interplan Architect, 2009 WL 6443117, at *6.

The Fifth Circuit has held that "the question whether two works are substantially similar [typically] should be left to the ultimate factfinder, but summary judgment may be appropriate if the court can conclude, after viewing the evidence and drawing inferences in a manner most favorable to the nonmoving party, that no reasonable juror could find substantial similarity of ideas and expression."  Peel & Co., 238 F.3d at 395; see also Positive Black Talk, 394 F.3d at 378 (stating that "the question of substantial similarity is typically left to the

fact finders' own impressions.").

Defendant here has not moved for summary judgment but rather seeks dismissal under Rule 12(b)(6), based on a 2.75" by 2.5" photograph of the front elevation of each home, which defendant submits clearly demonstrates that the homes are not substantially similar.  The court does not doubt that there are cases in which dismissal under Rule 12(b)(6) would be appropriate where the complaint itself, or materials otherwise properly before the court, conclusively establish that substantial similarity is lacking.  See Peter F. Gaito Architecture, LLC v. Simone Dev. Corp., 602 F.3d 57, 63 (2d Cir. 2000) (opining that while "questions of non-infringement have traditionally been reserved for the trier of fact" as "the question of substantial similarity typically presents an extremely close question of fact, ... in certain circumstances, it is entirely appropriate for a district court to resolve that question as a matter of law, 'either because the similarity between two works concerns only non-copyrightable elements of the plaintiff's work, or because no reasonable jury, properly instructed, could find that the two works are substantially similar.'" (quoting Warner Bros. Inc. v. Am. Broad. Cos., 720 F.2d 231, 240 (2d Cir. 1983)).  But that is not the case here.

The court finds that it is unable to rule as a matter of law, based solely on the referenced photographs, that the works

13

are not substantially similar, or that a jury could not find
them substantially similar.  Owing to the small size and
relatively poor quality of the photographs and also to
landscaping which obscures parts of the Basse Residence, the
court is unable to discern some of the differences asserted by
defendant, such as, for example, the "wave-like, sweeping
parapet walls that project from the center of the home" and the
Kelly Residence's "ornate balconies."  And there are obvious
similarities in the "overall look and feel" of the two homes.
Thus, the court is not inclined, especially on a motion to
dismiss, to find that as a matter of law, that the homes' front
elevations are not substantially similar.[6]

### 3. No Personal Copying

Defendant argues that he cannot be liable under a direct
infringement theory for reproducing the Basse Residence
architectural work or for preparing derivative works since, as a
matter of law, plaintiff's own allegations, accepted as true,

---

[6]    Notably, too, neither party has addressed the issue of
which elements are protectible and which are not.  Defendant
does argue that "the 'idea' of a front elevation that 'draws the
observer's attention to the center of the home," which plaintiff
alleges is what the Basse Residence design was intended to
accomplish, is unprotectible.  See 17 U.S.C. § 102(b) (copyright
protection does not extend to "any idea, ... regardless of the
form in which it is described, explained, illustrated, or
embodied in such a work.").  The court, however, does not
interpret the complaint as asserting, in substance, ownership in
an idea but rather in a specific design.

establish that defendant neither created the plans for nor built the Kelly Residence that allegedly infringe the Basse Residence design plans and/or structure.  Rather, by his own allegations, the Kelly House Drawings were created by defendant's architect, Stackable, and the Kelly Residence was built by defendant's contractor.  He further argues that plaintiff's allegation that "Defendants and/or Stackable obtained a copy of the BOHEME plans for the Basse Residence," does not plausibly allege that defendant created or reproduced a copy of the Boheme plans for at least two reasons.  First, the complaint, by phrasing this allegation in "and/or" terms, does not actually allege that defendant obtained a copy of the Basse residence plans; and second, even if it could be read as alleging that he "obtained" the plans, the allegation is not sufficient to allege copying by defendant.  These arguments lack merit.

Direct copyright infringement requires volitional conduct, which is "conduct by a person who causes in some meaningful way an infringement."  BWP Media, 852 F.3d at 440.  As indicated in BWP Media, this requires that there be "actual infringing conduct with a nexus sufficiently close and causal to the illegal copying that one could conclude that the [defendant] himself trespassed on the exclusive domain of the copyright owner."  Id. at 440 (quoting Religious Tech. Ctr. v. Netcom On-Line Commc'n Servs., 907 F. Supp. 1361 (N.D. Cal. 1995)); see

15

<u>also</u> <u>id</u>. at 440 n.1 (recognizing that the word "volition" in this context "stands for the unremarkable proposition that proximate causation historically underlines copyright infringement liability no less than other torts," and concluding that, "[a]t the very least, the Act requires conduct by a person who causes in some meaningful way an infringement.") (cleaned up).

It is thus clear that one can be liable for direct infringement without performing the physical acts that constitute the copying.  Here, the complaint alleges that defendant hired Stackable and "asked Stackable to design a house to be built on the BK Properties lot so that the exterior elevation on the street side would be a copy of the same elevation of the Basse Home."  In the court's opinion, this allegation, that defendant directed his architect to design a house with the same street-side elevation as the Basse Residence, is volitional conduct that can support a claim for direct liability.

Further, defendant's objection that the complaint cannot be read as affirmatively alleging that he personally "obtained" a copy of the Basse Residence drawings is not dispositive of plaintiff's claim.  The relevant question is not whether defendant personally obtained the plans but whether he had access to the design.  Such access is adequately alleged in the

complaint.  The court thus concludes that plaintiff has
plausibly alleged that defendant reproduced the Basse
architectural work or prepared derivative works based on the
Basse Residence.

### 4. <u>Failure to Register Copyright in Technical Drawings</u>

Defendant asserts that any potential claim by plaintiff
which rests on an assertion of copyright in the technical
drawings for the Kelly Residence, as opposed to the
architectural work, i.e., the constructed residence, necessarily
fails because plaintiff has not pled the statutory prerequisite
of copyright registration of a technical drawing.

Regulations promulgated under the AWCPA provide that
"[w]here dual copyright claims exist in technical drawings and
the architectural work depicted in the drawings, any claims with
respect to the technical drawings and architectural work must be
registered separately." 37 C.F.R. § 202.11(c)(4).  Defendant
notes that while plaintiff has alleged that it registered the
Basse Residence as an architectural work, it has not alleged
that it separately registered the "technical drawings," and that
consequently, it cannot sue for infringement of the technical
drawings, i.e., the design plans or drawings.

Plaintiff argues in response that since the AWCPA's
definition of "architectural work" includes both the constructed
residence and the "architectural plans, or drawings," it follows

that by registering the Basse Residence "architectural work," it also registered the architectural plans/drawings for the residence.  See 17 U.S.C. § 101 (defining architectural work as the "design of a building, as embodied in any tangible medium of expression, including a building, *architectural plans, or drawings*." (emphasis added)).    The court concludes otherwise.

The requirement of separate registration of architectural works and technical drawings is addressed in Section 926.1 of the Compendium of U.S. Copyright Practices, which, in the court's view, makes clear that registration of an "architectural work" as only an "architectural work" does not include the "plans, or drawings" but only the building itself.[7]  This section states:

---

[7]    The Compendium, which is a non-binding administrative manual of the Register of Copyrights addressing the Copyright Act and regulations promulgated thereunder, "provides instruction to agency staff regarding their statutory duties and provides expert guidance to copyright applicants, practitioners, scholars, the courts, and members of the general public regarding institutional practices and related principles of law." Emmerich Newspapers, Inc. v. Particle Media, Inc., Civ. Act. No. 3:23cv26-TSL-MTP, 2025 WL 2146609, at *4 (S.D. Miss. July 29, 2025) (quoting Brunson v. Cook, No. 3:20-CV-01056, 2023 WL 2668498, at *5 (M.D. Tenn. Mar. 28, 2023)).  The Supreme Court has held that the Compendium "merits deference under Skidmore v. Swift & Co., 323 U.S. 134, 65 S. Ct. 161, 89 L. Ed. 124 (1944)," meaning it must be followed only "to the extent it has the 'power to persuade.'"  Georgia v. Public.Resource.Org Inc, 590 U.S. 255, 271, 140 S. Ct. 1498, 206 L. Ed. 2d 732 (2020).

> Architectural Works Distinguished from Technical Drawings
>
> An architectural work and a technical drawing of an architectural work are separate works.  H.R. Rep. No. 101-735, at 19 (1990) ("An individual creating an architectural work by depicting that work in plans or drawing[s] will have two separate copyrights, one in the architectural work . . . the other in the plans or drawings.").
>
> If the applicant intends to assert a claim in a technical drawing and the architectural work depicted therein, the applicant should file an application to register the architectural work and a separate application to register the technical drawing as a pictorial work, even though the deposit copy(ies) for both applications may be the same. 37 C.F.R. § 202.11(c)(4). ("Where dual copyright claims exist in technical drawings and the architectural work depicted in the drawings, any claims with respect to the technical drawings and the architectural work must be registered separately.").
>
> A registration for a technical drawing covers the drawing itself, but it does not cover the architectural work depicted therein.

U.S. Copyright Office, Compendium of U.S. Copyright Office Practices § 926.1 (3d ed. 2021) (https://www.copyright.gov/comp3/docs/compendium.pdf) (last visited Jan. 28, 2026).  See also Thomas v. Artino, 723 F. Supp. 2d 822, 830 (D. Md. 2010) ("A work can obtain protection as both an architectural work and a technical drawing only if the work is registered under both categories."); Morgan v. Hawthorne Homes, Inc., Civ. Action No. 04-1809, 2009 WL 1010476, at *13 (W.D. Pa. Apr. 14, 2009) ("A work can obtain protection as both an architectural work and a technical drawing only if the work is registered under both

categories."); Nat'l Med. Care, Inc. v. Espiritu, 284 F. Supp. 2d 424, 434 (S.D. W. Va. 2003) ("In order for a work to be protected as both an 'architectural work' and a 'technical drawing,' it must be registered under both categories."); Rhein Bldg. Co. v. Gehrt, 21 F. Supp. 2d 896, 908 (E.D. Wis. 1998) ("The directions for copyright application make clear that these two vehicles of expression—plans and buildings—must have separate copyrights.").

As plaintiff has not alleged (and does not contend) that it has separately registered its plans and drawings for the Basse Residence, it may not pursue its claims against defendant for infringement of the plans and drawings,[8] and those claims will be dismissed.[9]

---

[8]   Given the court's conclusion that plaintiff is precluded from pursuing its claims herein based on alleged infringement of its architectural plans/drawings, the court need not decide the more complex question of whether the Kelly Residence Drawings depicting the home's exterior, as contrasted with the constructed home itself, are "pictorial representations" of the Basse Residence architectural work and hence exempt from infringement under 17 U.S.C. § 120(a), which states:

> The copyright in an architectural work that has been constructed does not include the right to prevent the making, distributing, or public display of pictures, paintings, photographs, or other pictorial representations of the work, if the building in which the work is embodied is located in or ordinarily visible from a public place.

[9]   Defendant has argued that plaintiff's putative claim for infringement based on defendant's alleged *distribution* of the Basse Residence architectural work must be dismissed due to the absence of factual allegations to satisfy the requirements of 17

## B. Secondary Infringement

Defendant argues that because plaintiff has failed to adequately plead a claim of direct infringement, there can be no secondary infringement liability and that plaintiff's claims of contributory infringement and vicarious infringement must be dismissed.  See Jaso v. Coca Cola Co., 537 Fed. Appx. 557, 560 (5th Cir. 2013) ("There can be no contributory infringement without a direct infringement.").  As the court has concluded that plaintiff has no cognizable claim for direct infringement of its architectural plans/drawings, it likewise has no claim for contributory or vicarious infringement of the plans/drawings.

### 1. Contributory Infringement

"One infringes contributorily by intentionally inducing or encouraging direct infringement."  Metro-Goldwyn-Mayer Studios

U.S.C. § 106(3).  Plaintiff disputes this, arguing that by alleging that the Basse residence was constructed, it has plausibly alleged that it submitted an application for a building permit, which would amount to "distribution" of the plans.  Plaintiff requests that if the court finds that it has not adequately alleged distribution by defendant, it be allowed to amend to add allegations supporting its distribution claim. The complaint does not adequately allege distribution; but since the court has concluded that plaintiff is barred from pursuing a claim for infringement based on its plans and drawings since it failed to separately register them, plaintiff's request to amend is denied based on futility.  See Stripling v. Jordan Prod. Co., LLC, 234 F.3d 863, 872-73 (5th Cir. 2000) ("It is within the district court's discretion to deny a motion to amend if it is futile.")

Inc. v. Grokster, Ltd., 545 U.S. 913, 125 S. Ct. 2764, 2776, 162 L. Ed. 2d 781 (2005). "To establish a claim for contributory copyright infringement, a copyright owner must show that the defendant, with knowledge of the infringing activity, induces, causes or materially contributes to infringing conduct of another." DynaStudy, Inc. v. Houston Indep. School Dist., 325 F. Supp. 3d 767, 775 (S.D. Tex. 2017) (citing Alcatel USA, Inc., v. DGI Technologies, Inc., 166 F.3d 772, 790 (5th Cir. 1999)). Defendant argues that plaintiff's claim of contributory infringement fails as a matter of law because plaintiff has failed to plead facts demonstrating that defendant had knowledge of any allegedly infringing activity. In this vein, he contends that "Plaintiff did not register the Basse Residence architectural work until May 2, 2025, precluding any constructive notice that Defendant may have had until well after the Kelly Residence Drawings were created and the Kelly Residence was nearly complete," and that "Plaintiff did not otherwise notify Defendant of the alleged infringement until initiating this action."

Direct copyright infringement "is a strict liability offense, meaning '[i]ntention to infringe is not essential under the [Copyright] Act.'" Longwell v. Wynd Travel Choice Global, Inc., Case No. 1:19-CV-00557-RP, 2022 WL 22877319, at *2 (W.D. Tex. 2022) (quoting Buck v. Jewell-LaSalle Realty Co., 283 U.S.

191, 198 (1931), and citing Fed'n of State Massage Therapy Bds. v. Mendez Master Training Ctr., Inc., 393 F. Supp. 3d 557, 573 (S.D. Tex. 2019) ("Copyright infringement is a strict liability tort and plaintiffs do not need to prove a defendant's mental state to prosecute a claim.")).  Contributory infringement, in contrast, is not a strict-liability concept.  MPAY Inc. v. Erie Custom Computer Applications, Inc., Civ. No. 19-704 (PAM/BRT), 2021 WL 2551413, at *6 (D. Minn. June 22, 2021) (citing MGM Studios, 545 U.S. at 930, for holding that "[o]ne infringes contributorily by intentionally inducing or encouraging direct infringement...."); see also Coach, Inc. v. Sapatis, Civ. No. 12-cv-506-PB, 2014 WL 2930595, at *5 (D.N.H. June 27, 2014) (stating, "Contributory infringement doctrine does not impose a strict liability standard.").  Thus, to succeed on a claim of contributory infringement, the plaintiff must allege and prove that the defendant acted with knowledge that the activity was infringing.  See 4 Melville B. Nimmer & David Nimmer, Nimmer on Copyright § 13E.03 (Matthew Bender, Rev. Ed.) (stating, "[I]t is not enough that the defendant knows that a copy is being made, a copy is being distributed . . . [I]nstead, defendant must know or have reason to know that the activity is infringing.").

Defendant maintains that the complaint makes only a conclusory allegation of knowledge and contains no factual support for such allegation and therefore fails to plausibly

allege that he had the requisite knowledge of alleged infringing activity.  The court agrees and thus finds that the claim for contributory infringement should be dismissed.[10]

### 2. **Vicarious Infringement**

To state a claim for vicarious infringement, a plaintiff must allege facts demonstrating that the defendant "(1) had a direct financial interest in the infringing activity and (2) had the right and ability to supervise the infringing party's acts which caused the infringement."  Zenimax Media, Inc. v. Oculus VR, LLC, 166 F. Supp. 3d 697, 704 (N.D. Tex. 2015).  To satisfy the requirement of a "direct financial interest," the vicariously liable defendant must "profit[] directly from the infringement."  MGM Studios, 545 U.S. at 930, n.9, 125 S. Ct. 2764.  Here, plaintiff has alleged that defendant "had a financial interest in the creation and distribution of paper and

---

[10]   Plaintiff's reliance on McMillan Co. v. I.V.O.W. Corp., 495 F. Supp 1134 (D. Vt. 1980), as support for its contention that it has plausibly alleged a claim for contributory infringement is misplaced.  In McMillan, the property owner was found liable for contributory infringement where he arranged for a contractor, MacMillan Company, to prepare plans for an addition to a shopping center, and then, after removing the title blocks of the drawings which showed that the plans were prepared by MacMillan vice president Allan McAnney, gave the plans to another contractor, Etbro Construction Company, which it hired to construct the addition.  Etbro, in turn, hired an architectural firm to prepare plans for the addition based on the plans prepared by McAnney.  The proof, including the owner's removal of the title block showing McAnney's authorship, demonstrates his knowledge that the plans were protected.

digital copies and derivatives of the Basse Residence
architectural work and in the construction of the house[] based
on the Basse Residence architectural work by Stackable and the
Contractor."  No factual support is offered to support this
entirely conclusory allegation, which is to say, there is
nothing in the complaint to indicate *how* the defendant
supposedly directly profited from the allegedly infringing
activity.  Thus, assuming it can be inferred from the fact of
his ownership of the property that defendant had "the right and
ability to supervise the infringing party's acts which caused
the infringement," plaintiff has failed to state a claim for
vicarious liability based on the absence of any facts to support
the charge of defendant's direct financial interest in the
infringing activity.

### V. Conclusion

Based on the foregoing, it is ordered that defendants'
motion to dismiss is granted in part and denied in part, as set
forth herein.

SO ORDERED this 28th day of January, 2026.


/s/ Tom S. Lee
UNITED STATES DISTRICT JUDGE

25